No. 36,209

JOHN B. CASEY and MARY L. CASEY, *Appellants*, v. NORMAN J. PRESCOTT and GUERTRUDE PRESCOTT, *Appellees.*

(152 P. 2d 846)

Opinion filed November 4, 1944.

*Walter T. Chaney,* of Topeka, argued the cause for the appellants.
*Tinkham Veale,* of Topeka, argued the cause for the appellees.

The opinion of the court was delivered by

THIELE, J.: This appeal arises out of a controversy concerning contracts for the exchange of tracts of real property in Topeka. In

order that the matters involved in the appeal may be more readily understood we make the following general statement. In this opinion the parties will be referred to by their surnames except where more particularity is required. The Caseys were the owners of certain real estate hereafter referred to as the Garfield avenue property, and the Prescotts were the owners of certain real estate hereafter referred to as the Monroe street property. About October 15, 1942, the Caseys and the Prescotts entered into a written contract for the exchange of their respective properties. Some difficulties arose and the Prescotts brought an action against the Caseys for specific performance. The Caseys employed an attorney to defend the action, but before it was tried it was agreed the contract should be redrafted. A new contract was prepared and executed as more fully set out later, and the first action was dismissed with prejudice. Controversy arose respecting the second contract and to obtain a settlement of their rights in their property the Caseys, having discharged their first attorney prior thereto, retained their present counsel and on April 21, 1943, commenced an action to quiet their title as against the Prescotts in their Garfield avenue property. Their petition contained the usual allegations of ownership and possession, and, presumably, that the Prescotts claimed an adverse interest. The Prescotts filed an answer and cross-petition alleging that on January 16, 1943, they and the Caseys entered into a contract for the exchange of the above properties, a copy being attached and made part of the pleading, and that in compliance they submitted an abstract of title to their property to the Caseys who had the abstract examined by their attorney who made certain requirements and suggestions and which were later complied with by the Prescotts; that they were ready, willing and able to comply with the contract, and so advised the Caseys but the Caseys failed and refused to comply with their part. They prayed for specific performance. For present purposes it may be said the contract states it was made "this........ day of December, 1942." Attached, however, is a notary's certificate it was acknowledged by the Prescotts on January 16, 1943. The contract recited further that the parties had entered into a certain contract on October 15, 1942, which was not intended as a final contract and "it is claimed that portions of the same are ambiguous" and that the parties were desirous of reducing their agreement of October 15, 1942, to writing "and to include the final agreement between the parties" and it was provided the Prescotts were to sell the Caseys

their Monroe street property for $5,500, payable in the following manner: The Caseys were to convey to the Prescotts the Garfield avenue property, free of encumbrance except a mortgage on which there was due $2,424.08, which the Prescotts assumed and agreed to pay and the balance of $3,424.08 in monthly installments of $50. The details about application of the payments, etc., need not be set forth. The contract made provision for submission and examination of abstracts. There was also an agreement that the Prescotts were to convey to the Caseys by bill of sale, certain described personal property in the Monroe street property. There was a further agreement that the Prescotts were to execute a warranty deed and to place it with a letter of instructions in escrow in a named bank, the deed to be delivered to the Caseys upon compliance with the contract. It was further stated that it was understood by the parties there was a heating stoker and water heater in the Garfield avenue property on which there were certain monthly payments due, the amount not being specified "and the parties of the second part [Caseys] agree to pay the balance of said payments . . . as part of the consideration for this contract." The Caseys filed a reply and an amended reply to the above answer and cross petition, the substance of which was that the clause as to the heating stoker and water heater had been altered in that the contract as executed by the Caseys provided the Prescotts should pay the remaining unpaid installments. The Caseys also alleged an unreasonable length of time elapsed between date of the contract and the escrow deposit on April 26, 1943. The Caseys also alleged the Prescotts misrepresented the basis of rental of apartments in the Monroe street property. The Prescotts filed a further pleading admitting the pleaded alteration of the contract and alleging the alteration was made to comply with the true agreement of the parties and with the full consent of the agent and attorney of the Caseys, and further that, although time elapsed between the time the contract was entered into and the time their deed was placed in escrow, they had at all times been ready, able and willing to perform and had so advised the Caseys, but the Caseys refused to comply with their contract shortly after its execution and continued to do so.

At the conclusion of the trial on the issues thus joined, the trial court made fifteen findings of fact and conclusions of law. So far as is necessary to mention those findings and conclusions, they are summarized as follows: On October 15, 1942, the Caseys and Pres-

cotts entered into an exchange contract prepared by a real estate agent, which provided that the Caseys were to make the payments on the stoker and water heater. The day after the contracts were executed Mr. Casey told the real estate agent he was not going through with the contract and for him to get the contracts from the Prescotts. On October 20, 1942, the Prescotts filed an action against the Caseys for specific performance and the Caseys employed a named attorney (not their present attorney) to defend them and to adjust their differences with the Prescotts; that the attorney for the Caseys and the attorney for the Prescotts conferred and a new contract was agreed upon and the suit then pending was dismissed. During the time between filing and dismissal of the first suit the attorneys for the respective parties prepared the contract heretofore outlined. It was executed by the Caseys and by Mr. Prescott. Mrs. Prescott was away. Upon her return she called attention to what she believed was an error about who was to pay for the stoker and water heater, and when this was called to the attention of her attorney he called the Casey's attorney and asked permission to alter the contract to provide the Caseys were to pay the installments coming due, the permission was given, the contract was amended and Mrs. Prescott signed. The Caseys did not expressly authorize their attorney to consent to the alteration of the contract after its execution by them nor did they consent to the alteration after it was made. The trial court further found that the ambiguities which existed in the contract of October 15, 1942, concerning which attorneys for the parties negotiated and which led up to the contract dated December —, 1942, did not include anything with relation to the heater and stoker and who was to make the remaining payments on them, and that the evidence disclosed that it was always understood the Caseys were to make the balance of the payments due. It was further found that the Caseys were notified by letter on April 5, 1943, that the Prescotts had complied with the requirements on the title, and Caseys were requested to exchange deeds and possession according to the contract. It was further found that the Prescotts did not misrepresent to Caseys the basis on which an apartment was rented.

At the trial the Caseys had objected to any consideration of the contract of October 15, 1942, for reasons later discussed. The first conclusion of law was that the objection was overruled, and that it was competent to show the provision of the contract that the Caseys

were to make the remaining payments on the stoker and heater was not one of the ambiguities to be taken care of by the new contract; that plaintiffs should take nothing by the petition; that the Caseys' attorney had authority under the terms of his employment to consent to the change in the terms of the second contract; that the Prescotts had not violated the contract by unreasonable delay nor by any misrepresentation of the terms of tenancy on the Monroe street property; that the Prescotts had a good and merchantable title to the Monroe street property as contemplated in the contract and that they should have judgment for specific performance.

In their brief in this court appellants Casey make five general contentions. They first contend that the alteration of the contract after its execution by them, to which alteration they did not subsequently agree, and under the circumstances here existing, avoided the contract. It is argued that their then attorney had no authority to alter the contract nor to consent to its alteration, and our attention is directed to many authorities holding variously that the employment of an attorney to prepare a contract does not invest him with real or implied authority to modify the agreement as to any of its terms; that an attorney may not alter or vary the terms of a contract entered into by his client; that the burden of proving the attorney's authority rests upon the party seeking the benefit thereof; that here the employment was only a general retainer to prepare and carry out a contract and not to conduct litigation where a more liberal rule is indulged as to an attorney's implied authority. A number of the decisions relied on may be found in the annotation in 76 A. L. R. 1461. We do not find it necessary to take up and discuss these cases for the rules of law laid down in them are generally sound. Their applicability here, however, is rather remote. Although appellants contend the first contract of October 15, 1942, has no place in this litigation, a contention hereinafter discussed, we think the situation of fact here existing makes the above-mentioned rules of law of little consequence. The contract of October 15, 1942, clearly provided that the stoker and water heater payments were to be paid by the Caseys. When trouble arose under that contract, resulting in the first suit for specific performance, the difficulty, according to undisputed testimony, arose not from the agreement as to the stoker and heater, but on account of provisions as to application of the monthly payments from the Caseys to the Prescotts and as to certain personal property that was to be left in the Pres-

cott property and conveyed to the Caseys. It was agreed the contract should be redrafted and the first suit dismissed with prejudice. The contract was redrafted and the transposition of liability for the stoker and water heater payments was made in the redraft. If the Caseys were aware of the change they said nothing and executed the contract. Mr. Prescott did not notice the change and executed the contract. Mrs. Prescott did notice the change, called attention of her attorney to it and he took the matter up with the Caseys' attorney who agreed to the alteration or amendment to make the contract show the agreement of the parties. The record as abstracted shows the above and the findings of fact of the trial court include the main points. What was done by the two attorneys was done in order to procure a settlement of the litigation. After the contract was finally signed by Mrs. Prescott, and the Caseys' attorney had examined the abstract of title to the Prescott property and Prescott had commenced to comply with requirements made, the first suit was dismissed with prejudice. At the trial, the Caseys stood and here stand, on the cold legal proposition that their attorney was without authority to consent to alteration of the contract as it was when they signed their names to it—they do not deny the contract as amended does not contain the agreement as made. Our examination of the abstract and counter-abstract fails to disclose any testimony by anyone that the agreement in the first contract the Caseys were to pay the stoker and water heater payments was not the true agreement, or was ever in dispute, or was changed in any negotiations, or that the transposition of liability as contained in the second contract was anything but a mistake in the preparation of the second contract. The record as abstracted does not disclose with any certainty whether the Caseys' attorney or the Prescotts' attorney drew the second contract, or whether they worked together on it. Assuming competency of the evidence, it is clear a mistake was made in drafting the second contract and the claimed alteration was nothing more than an amendment to make it speak the truth according to the agreement of the parties. Under these facts we think the conclusion of the trial court that the Caseys' attorney had authority to consent to the change was correct.

The Caseys contend further that the trial court erred in receiving in evidence the original contract of October 15, 1942. As we understand this contention it is that this contract was the basis for the first action and when that action was dismissed with prejudice it

was a complete adjudication of everything pertaining to that contract. Coupled with that contention is the further one that when the second contract was made, it contained the full and final agreement of the parties. It may here be noted the only objection at the trial was that the original contract was incompetent, irrelevant and immaterial and was superseded by the subsequent contract. Our attention is directed to *Hargis v. Robinson,* 70 Kan. 589, 594, 79 Pac. 119, where it was said that dismissal of an action "with prejudice" is equivalent to an adjudication upon the merits, and also to *Pulley v. Chicago, R. I. & P. Rly. Co.,* 122 Kan. 269, 251 Pac. 1100, where it was held that the averment in a second action to recover compensation that a settlement, made in an antecedent action and upon which a judgment was rendered, was made through mutual mistake, did not destroy the final effect of the judgment previously rendered. We think these authorities do not support appellants' present contention. The Prescotts did not offer the first contract for the purpose of relying on it as a cause of action or as a ground for relief, nor did they seek to avoid the consequences of the dismissal with prejudice of the first action. There was other proof that the original agreement was the Caseys were to pay the future installments on the stoker and water heater; the second contract showed it was made to clear ambiguities; it was shown what those ambiguities were; that who was to pay the installments on the stoker and water heater was not in dispute; that the original contract on this phase was never changed, and that when the second contract was executed and performance under it commenced, the first suit was dismissed. Certainly the first contract was admissible in evidence in corroboration. We are of the opinion the first contract was properly received in evidence and considered by the trial court.

The appellants also complain that an unreasonable time elapsed between the execution of the second contract and the performance of its conditions. The contract was finally executed on or about January 16, 1943, and escrow of the deed and letter of instructions was not made until April 26, 1943, or after appellants had filed their action on April 21, 1943. The contract contained no definite date for closing the transaction or for the deposit in escrow. Shortly after execution of the contract the Caseys' attorney examined the abstract of title to the Prescott property, and whether necessary or not, made certain requirements. The Prescotts immediately started to comply with the demands. On February 8, 1943, the Prescotts de-

posited the sum of $100 with the Caseys' attorney, to be used in quieting title if his requirements could not be met. On April 5, 1943, the Prescotts' attorney notified the Caseys the requirements had been met and they were ready to close the transaction, and requested compliance with the contract, but the Caseys never complied with the request. ·Other less important evidence bearing on the Prescotts' diligence and unreasonableness of the Caseys' demands need not be ́set out. The record does not disclose the trial court erred in holding the Prescotts did not violate the contract by reason of unreasonable delay in finally placing the deed in escrow.

The appellants also contend the Prescotts misrepresented the rental value of their property. We shall not discuss this contention at length. The most that can be said is that the evidence of the Caseys was disputed by that of the Prescotts. The trial court settled the fact and there is no legal reason for upsetting its conclusion. Under well-settled authority, the finding of fact is conclusive on appeal.

And finally, appellants contend the trial court erred in refusing to make findings of fact and conclusions of law requested by them and in making the findings and conclusions of law it made. We shall not review the evidence. A careful reading of the abstract and counter abstract discloses substantial evidence to support the findings of fact as made by the trial court, and it matters not that there was evidence from which contrary conclusions might have been drawn. The conclusions of law drawn from those findings of fact are not erroneous. The contention of error is not sustained.

The judgment of the trial court is affirmed.